IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MEL BAILEY INDIVIDUALLY AND
ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF MARIE
H. BAILEY, DECEASED, AND THE
ESTATE OF MARIE H. BAILEY,
DECEASED, BY AND THROUGH MEL
BAILEY, EXECUTOR**     **PLAINTIFFS**

**V.**     **CIVIL ACTION NO. 3:09-CV-158-HTW-LRA**

**MONITRONICS INTERNATIONAL, INC.**     **DEFENDANT**

### ORDER

Before the court are three motions filed by plaintiffs, Mel Bailey, individually and on behalf of the wrongful death beneficiaries of Marie H. Bailey, and the Estate of Marie Bailey (collectively referred to as "Bailey"): a motion to extend the discovery deadline [docket no. 329]; a motion to compel responses to interrogatories [docket no. 330]; and a motion to compel responses to requests for production of documents [docket no. 331]. Defendant, Monitronics International, Inc. ("Monitronics") opposes the motions to compel.

Because there is no opposition to the motion to extend the discovery deadline, this court hereby grants that motion [docket no. 329]. Having considered the motions to compel responses, this court hereby grants in part and denies in part the motions to compel [docket nos. 330 and 331]. This court orders Monitronics to respond to Interrogatory Nos. 5 and 16 and Request No. 2. This court declines to compel responses to Interrogatory Nos. 4, 6, 7, 8, and 15 and Requests Nos. 1, 4, 6, and 7.

1

## I. Procedural Background

On June 17, 2013, this court entered an order [docket no. 289] overturning the Magistrate Judge's order limiting discovery [docket no. 154] and reopening discovery. Regarding discovery, this court stated:

> Accordingly, this court allows plaintiffs to investigate Monitronics involvement with the NFPA:
> - Monitronics' stance on its contractual relationship with Kingdom Security and Rexford Alarm Service as to whether Monitronics' had an obligation to ensure compliance with NFPA 72.
> - Whether Monitronics had an obligation to ensure compliance with NFPA 72 once it purchased Bailey's contract.
> - Whether Monitronics was personally or constructively aware whether the placement of the smoke detector in Bailey's home complied with NFPA 72 standards.
> - Whether Monitronics had any obligation under NFPA 72 to change the location of any improperly placed smoke detector.
> - Whether Monitronics owed any additional duty to Bailey after she informed a representative of her eyesight problems.
> - What requirements under NFPA 72 did Monitronics impose on itself and its dealers?
> - Whether Monitronics considered NFPA 72 as a governing standard for its contracts.
> - Whether Monitronics had any obligation to enforce NFPA 72 under the contract with Bailey.
>
> The general intent of this order is to allow the plaintiffs to explore in discovery Monitronics' view of its obligations under NFPA 72 and its obligations to Bailey. The questions proposed herein are not all inclusive, and plaintiffs may ask additional questions aimed towards discovering Monitronics' obligations and duties under NFPA 72.

Order, docket no. 289.

On June 21, 2013, Bailey propounded interrogatories [docket no. 292] and requests for production of documents [docket no. 292]. On July 24, 2013, Monitronics submitted its responses [docket nos. 299 and 300].

Monitronics objects to Interrogatories 4, 5, 6, 7, 8, 15, and 16. These objections are largely based upon Monitronics' claim that these Interrogatories are outside the scope of the court's June 17, 2013, are burdensome, and are not calculated to discover admissible evidence.

Monitronics also objects to Requests 1, 2, 4, 6, and 7. These objections, like those to the Interrogatories, are largely based upon Monitronics' claim that that these Requests are outside the scope of the court's June 17, 2013, are burdensome, and are not calculated to discover admissible evidence.

In response to Monitronics' objections, Bailey filed the instant motions to compel [docket no. 330 and 331], asking this court to order Monitronics to provide responses.

## II. Motion to Compel Responses to Interrogatories

A. <u>Interrogatory No. 4</u>

Interrogatory No. 4 queried:

> When did Monitronics first become aware that improper configuration of telephone line seizure was one of the common mistakes made during the installation of an alarm system, and describe how Monitronics became aware of this information?

Monitronics originally objected to this this Interrogatory, saying it was "outside the scope of permissible discovery" under the court's June 17, 2013 order because the discovery request does not pertain to Monitronics' view of its obligations under NFPA 72 and its obligations to Marie Bailey. Further, Monitronics stated that Interrogatory No. 4 was

3

overly broad, unduly burdensome, ambiguous, and not reasonably calculated to lead to discovery of admissible evidence. Monitronics also objected to the Interrogatory's assertion that improper line seizure is a "common mistake."

In the motion to compel, Bailey stated that during discovery Monitronics produced a slide show that described improper configuration of telephone line seizures as a "common mistake." Bailey also noted that Monitronics has admitted that improper configuration of telephone line seizures is a mistake that authorized dealers make. Bailey claims it merely wishes to know when Monitronics became aware of this problem. Bailey further says that this inquiry is within the scope of permissible discovery, because Bailey contends NFPA 72 obligated Monitronics to properly install this line seizure.

Monitronics replies that it has already answered this question: Monitronics does not believe that improper line seizure is a "common mistake." During his Rule 30(b)(6)[1] deposition on behalf of Monitronics, Robert Sherman ("Sherman") testified that he wasn't aware that Monitronics had determined that the lack of telephone line seizure was a "common mistake." When presented with a copy of the slide show, Sherman said that he did not know the context in which the slide show was presented. Sherman suggested that the slide show might have been dealer specific. Further, Monitronics

---

[1] Rule 30(b)(6) of the Federal Rules of Civil Procedure states:
    **Notice or Subpoena Directed to an Organization.** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

4

argues that it would be unnecessarily burdensome to determine the first time that it became aware that any dealer was improperly configuring a telephone line seizure.

This court agrees with Monitronics that this Interrogatory is not within the scope of this courts' ordered discovery. The Interrogatory deals with Monitronics awareness of a problem, not with Monitronic's view that it had an obligation, under its contracts or NFPA, to address that problem. Therefore, this court declines to compel a response.

B. <u>Interrogatory No. 5</u>

Interrogatory No. 5 asked:

> Identify the names, last known addresses, and telephone numbers of those employees of Monitronics who conducted random quality inspections of accounts purchased by Monitronics from the time the inspection program began up to the present.

Monitronics originally objected to this interrogatory on the grounds that it was outside the scope of permissible discovery under the court's order because the Interrogatory did not pertain to Monitronics' view of its obligations under NFPA 72 and its obligations to Bailey. Monitronics further contended that the Interrogatory was not reasonably calculated to lead to the discovery of admissible evidence.

In the motion to compel, Bailey argues that it requested this information in order to question the inspectors regarding the standards that they utilized in the field. Specifically, Bailey wishes to ask how the inspectors determined the correct placement of smoke detectors. Bailey says he wants to determine what steps Monitronics took to insure compliance with local codes and standards, and with what codes and standards Monitronics required its dealers to comply. Bailey admits that he is aware of two inspectors: Jess Fleming ("Fleming") and Don Postel ("Postel"). Postel, however, did

not begin working as an inspector for Monitronics until after the accident. Therefore, Postel, would not know anything about the inspection process during the time of Marie Bailey's service. Bailey's Interrogatory attempts to discover other inspectors who might have knowledge of the standards by which Monitronics judged its dealers.

In response, Monitronics argues that Bailey had knowledge of Fleming and Postel before the close of the original discovery period, yet Bailey failed to depose them. Because of this failure, Monitronics argues that Bailey should not be allowed to follow up on this line of questioning.

The point of this court's June 17, 2013, order was to permit additional discovery on the question of how Monitronics viewed its obligations to Bailey, either under contract or under NFPA 72. This court views Interrogatory No. 5 as reasonably calculated to lead to evidence on this point. Bailey wishes to question those individuals who were actually in the field and discover what standards Monitronics applied in determining if systems were installed in a "workmanlike manner." Such discovery may lead to admissible evidence regarding Monitronics obligations under NFPA 72 or the contract. Therefore, this court compels Monitronics to respond.

C. <u>Interrogatory No. 6 and Interrogatory No. 7</u>

Interrogatory No. 6 inquires:

> How many accounts were monitored by Monitronics in the State of Mississippi during the following time periods, and of those accounts, how many were subject to quality inspections:
> (a) January 1, 1997 to December 31, 1997;
> (b) January 1, 1998 to December 31, 1998;
> (c) January 1, 1999 to December 31, 1999;
> (d) January 1, 2000 to December 31, 2000;
> (e) January 1, 2001 to December 31, 2001;
> (f) January 1, 2002 to December 31, 2002;

>   (g) January 1, 2003 to December 31, 2003;
>   (h) January 1, 2004 to December 31, 2004;
>   (i) January 1, 2005 to December 31, 2005;
>   (j) January 1, 2006 to December 31, 2006;
>   (k) January 1, 2007 to December 31, 2007;
>   (l) January 1, 2008 to December 31, 2008?

Interrogatory No. 7 asks:

>   On average, how many accounts were monitored by
>   Monitronics nationwide during the following time periods and
>   of those accounts, how many were subject to quality
>   inspections during those time periods?
>   (a) January 1, 1997 to December 31, 1997;
>   (b) January 1, 1998 to December 31, 1998;
>   (c) January 1, 1999 to December 31, 1999;
>   (d) January 1, 2000 to December 31, 2000;
>   (e) January 1, 2001 to December 31, 2001;
>   (f) January 1, 2002 to December 31, 2002;
>   (g) January 1, 2003 to December 31, 2003;
>   (h) January 1, 2004 to December 31, 2004;
>   (i) January 1, 2005 to December 31, 2005;
>   (j) January 1, 2006 to December 31, 2006;
>   (k) January 1, 2007 to December 31, 2007;
>   (l) January 1, 2008 to December 31, 2008?

Monitronics originally objected to both interrogatories on the grounds that they were outside the scope of the court's June 17, 2013 order because they did not pertain to Monitronics' view of its obligations under NFPA 72 and its obligations to Marie Bailey. Further, Monitronics argued that the interrogatories were overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to admissible discovery. Monitronics said that, in order to respond to the requests, it would have to review each account that it monitored in the entire nation during an eleven-year time frame.

In his motion to compel, Bailey argues that this interrogatory addresses Monitronicss obligation under the Alarm Monitoring Purchase Agreement ("AMPA") and

7

the Maintenance Service Agreement ("MSA") to conduct inspections on the work performed by authorized dealers. According to Bailey, the AMPA imposed a duty for the seller to arrange for on-site inspections. Also according to Bailey, the MSA said that Monitronics would "evaluate all such Work to determine that the Work done by the Subcontractor meets workmanlike standards and whether the work is in conformity with the instructions given by Monitronics and in accordance with the terms and conditions of the agreement." Bailey contends that this Interrogatory is targeted towards discovering the frequency with which Monitronics complied with its own requirements.

In response, Monitronics argues that these two Interrogatories are not within the scope of the court's ordered discovery. Monitronics notes that this discovery is intended to discover the frequency with which Monitronics complied, not with Monitronics views on its obligations under NFPA 72 or its obligations to Marie Bailey. This court agrees with Monitronics. This court re-opened discovery to address Monitronics' views of its obligations under NFPA and its contracts. It has already been established that Monitronics never inspected the alarm system in Marie Bailey's residence. Monitronics also has admitted that it did not inspect every residence. Discovering the frequency with which Monitronics inspected the systems does not address how Monitronics viewed its obligations to Bailey or its other customers. Therefore, this court declines to compel a response to these interrogatories.

D. <u>Interrogatory No. 8</u>

Interrogatory No. 8 queries:

> Of those accounts that were subject to a quality inspection by Monitronics, how many accounts had issues involving no telephone line seizure, or the improper configuration of telephone line seizure.

8

Monitronics originally objected to this request because Monitronics believed that the request was outside the scope of permissible discovery under the court's July 13, 2013 order. Monitronics also considered the Interrogatory overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to discovery of admissible evidence. Monitronics further stated that in order to comply with the Interrogatory, it would have to review each inspection that occurred over an eleven-year period.

In his motion to compel, Bailey contends that the reports could easily be scanned using special technology that could search the documents for specific data. Bailey also contends that if Monitronics does not want to expend the time and money to review these documents, Monitronics could simply turn the documents over to Bailey, who would take on the job of reviewing them.

Monitronics rejects Bailey's offer to review the documents himself because Monitronics claims the inspection reports contain sensitive information that would need to be redacted prior to turning them over. Further, Monitronics says that discovery related to the number of times inspectors discovered improper configuration of telephone lien seizure does not related to Monitronics views of its obligations under NFPA 72 or its obligations to Marie Bailey.

This court agrees with Monitronics. Through this Interrogatory, Bailey is attempting to quantify an installation problem. The Interrogatory is not calculated to discover evidence regarding Monitronics views on its obligations, merely how often it encounters a problem. Therefore, this court declines to compel a response.

E. <u>Interrogatory No. 15</u>

Interrogatory No. 15 requests:

> From January 1, 2003, until March 1, 2008, did Monitronics monitor any accounts in the State of Mississippi that had a monitored fire alarm system which did not have an automated and supervised monthly test signal programmed into the respective control panel's digital alarm communicator transmitter (DACT). If the answer is yes, how many such accounts were monitored by Monitronics in the State of Mississippi during this time period?

Monitronics initially objected to this Interrogatory on the grounds that it was outside the scope of permissible discovery. Monitronics also contended that the request was overly broad, unduly burdensome, and not reasonably calculated to lead to discovery of admissible evidence.

Bailey argues that NFPA 72 requires every DACT to transmit a monthly test signal. Bailey claims that beginning in 1993, NFPA 72 required that every DACT in a one or two family residence "transmit a test signal to its associated receiver at least monthly." Failure to receive this signal, according to NFPA 72, should be treated as "trouble signal." Upon receiving the trouble signal, the central station is supposed to immediately contact the subscriber. Bailey contends that this information is within the scope of discovery because it addresses whether Monitronics had an obligation under NFPA 72 to ensure compliance or had imposed a requirement on itself to ensure compliance.

In response, Monitronics contends that this issue has already been addressed in its Rule 30(b)(6) deposition, in which it admitted that the DACT in Bailey's residence was not programed to transmit the automated monthly test signal. Further, Monitronics provided an extensive response explaining why it does not believe it is obligated to provide the DACT service under various NFPA regulations. Monitronics also provided an affidavit outlining the projected cost of complying with this Interrogatory. Monitronics

contends that the cost of recovering data from old software, reviewing all of the data, and redacting the data would cost approximately $80,000.00.

This court agrees that this Interrogatory is outside the scope of permitted discovery. Although a borderline issue, Bailey is attempting to discover if Monitronics was complying with a particular provision, not whether Monitronics believed it was bound by that provision. Although discovery is intended to be broad, the Rule 26(b)(2)(C)[2] of the Federal Rules of Civil Procedure allows the court to limit the extent of discovery "if the burden or expense" of the discovery would outweigh its potential benefit. Monitronics has averred that producing these documents will cost approximately $80,000.00. Monitronics has admitted that the DACT was not programed to transmit a monthly test signal, and provided a lengthy explanation of its view of its obligation to provide this service. This court is not persuaded that the benefit knowing the exact number of systems with a programmed DACT will outweigh Monitronic's projected costs. Therefore, this court declines to compel this Interrogatory.

F. <u>Interrogatory No. 16</u>

Interrogatory No. 16 asked Monitronics to:

---

[2] Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure states:
*When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
**(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
**(iii)** the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

11

> Identify any "reliable authority that any of your expert witnesses intend to refer to at trial in support of their testimony.

Monitronics initially objected to this Interrogatory because Monitronics said the request fell outside the scope of permissible discovery. Monitronics also objected because Bailey's experts have not fully disclosed their opinions.

Bailey, in his motion to compel, admitted that the wording of this Interrogatory was broad. Bailey explained that to the extent that Monitronics' experts intend to offer opinions about Monitronics' obligations under NFPA 72 and its obligations to Bailey, Monitronics should be compelled to provide the authority on which the experts rely.

In response, Monitronics opposes this Interrogatory because it does not relate to Monitronics' view on its obligations under NFPA 72 or its obligations to Marie Bailey. Monitronics, however, directs Bailey to review the authorities it already has cited in its designation of experts.

When a party designates an expert witness, the Federal Rules of Civil Procedure obligate the party to provide a written report that contains a statement of the expert's opinions; the facts or data the expert considered; any exhibits that will be used to summarize or support those opinions; the expert's qualifications; a list of cases in which the expert has testified in the past four years, and a statement of what compensation the expert will receive.[3] To the extent that either Bailey or Monitronics desires an expert

---

[3] Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure states:
*Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
    (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

witness to testify on Monitronics' obligations under NFPA 72 or Monitronics' obligations to Marie Bailey, Monitronics an Bailey must disclose the authority on which the expert witness relies.  To the extent that this additional discovery has caused either Monitronics' or Bailey's witnesses to rely on additional authority for their opinions, both parties must disclose that authority.

### III.    Motion to Compel Responses to Requests for Documents

A. <u>Request No. 1</u>

Request No. 1 asked:

> Produce a copy of the contract for the sale and installation of an alarm system between Marie Bailey and Kingdom Security International, or any other written agreement between Marie Bailey and Kingdom Security International bedsides the Alarm Monitoring Agreement attached as Exhibit "A."

Monitronics initially objected to this Request on the grounds that it was outside of the scope of permissible discovery allowed in the court's order.  Monitronics, however, admitted that it had no documents responsive to the Request.

In his motion to compel, Bailey contends that this Request No. 1 addresses Monitronics' view of its obligations to Bailey.  The existence of other contracts or agreements would shed more light on the duties Monitronics owed to Marie Bailey. Bailey notes that in the Rule 30(b)(6) deposition, Sherman testified that it was likely that

---

(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case

Monitronics had received a sales and installation agreement from Kingdom Security when Kingdom Security sold the contract to Monitronics.  Although Monitronics says it does not have Marie Bailey's sales and installation agreement, Bailey contends that Monitronics, which bought other contracts from Kingdom Security the same day it bought Bailey's contract, may have a similar agreement in another client's file.  Bailey asks the court to compel Monitronics to deliver any sales and installation agreement pertaining to any client's contract purchased from Kingdom Security.

Monitronics, however, says it has already answered this question before:  it does not have any additional contracts between Marie Bailey and Kingdom Security.  Although Monitronics does not believe it should be compelled to deliver a sales and installation agreement from another client, Monitronics says that it investigated the other Kingdom Security files and found no contracts that differed from the ones already produced.

This court declines to compel discovery.  Monitronics has answered that it has no documents responsive to Request No. 1.  This court cannot compel Monitronics to produce documents that it does not have.

B. <u>Request No. 2</u>

Request No. 2 asks:

> From March 1, 1997, until March 1, 2008, produce a copy of any form or template that was utilized by employees of Monitronics who conducted quality inspections of accounts purchased by Monitronics.

Monitronics originally objected to this Request on the grounds that it was outside the scope of permissible discovery.  Monitronics also contended that Bailey already asked Monitronics' witnesses about this topic during the depositions.

In his motion to compel, Bailey argues that Request No. 2 attempts to explore the criteria used to judge the quality of installations and whether the installation complies with Monitronics' requirements. Simply put, Bailey says he wants to find out if Monitronics obligated its dealers, through inspections, to comply with NFPA 72 standards.

Monitronics contends that it has already answered these questions through its Rule 30(b)(6) depositions. Monitronics says that its witnesses already have testified that dealers were expected to comply with local codes. Further, Monitronics denies that it had a contractual or legal obligation to inspect the residences.

Again, the purpose of re-opening discovery was to allow Bailey to explore how Monitronics viewed is obligations under NFPA 72 and under its contracts. Request No. 2 seeks to discover what obligations Monitronics imposed in the field. Although Monitronics does not believe that it had an obligation to inspect every residence that contained its alarm systems, the question of what standards it imposed when it did inspect is salient to what Monitronics viewed its obligations to be. Therefore, this court compels a response to Request No. 2.

C. <u>Request No. 4</u>

Request No. 4 asked:

> Produce a copy of any reports or documents providing
> feedback or criticism of any quality inspection performed by
> Monitronics from March 1, 1997, until March 1, 2008.

Monitronics originally objected to this Request on the grounds that it was outside the scope of permissible discovery allowed by the court's order. Monitronics noted that Bailey had deposed witnesses regarding this issue. Further, Monitronics contended

that this request for production is overly broad, unduly burdensome, and seeks confidential information.

Bailey contends that this Request addresses whether Monitronics had any obligation under NFPA 72 to change the location of an improperly placed smoke detector. Bailey seeks the actual reports in order to discover what inspectors actually did if they discovered a code violation when inspecting homes.

In response, Monitronics complains that this Request is not designed to inquire into what obligations Monitronics owed to Marie Bailey. Further, Monitronics submitted an affidavit that projected the costs of reviewing and redacting these inspection documents be around $14,456.00.

This court disagrees with Monitronics' contention that this Request is outside the scope of court ordered discovery. Request No. 4 addresses what rules and regulations Monitronics imposed upon itself in the field. Monitronics, however, has demonstrated that producing these documents would be costly. This court has already said that Bailey can discover the identities of the inspectors (ostensibly so that Bailey may depose those inspectors), Bailey may ask these questions of the inspectors. Therefore, this court declines to compel this Request. Bailey, however, may seek these answers through its depositions of the actual inspectors.

D. <u>Request No. 6</u>

Request No. 6 asks:

> Produce a copy of the log from the Digital Alarm
> Communicator Receiver listing the telephone numbers that
> dialed the DACR on February 12, 2008. If there is more
> than one DACR, then this request is directed at the DACR
> that Marie Bailey's DACT was programmed to dial.

Monitronics originally objected to this Request because, Monitronics claimed, it is outside the scope of permissible discovery. Monitronics also contended that Request No. 6 is overly broad, unduly burdensome, and not calculated to lead to admissible evidence.

In his motion to compel, Bailey argues that Request No. 6 addresses Monitronics' obligation under NFPA 72 to configure the alarm system in such a way as to contact the monitoring company. Bailey says he is attempting to explore how Monitronics met its obligations to Marie Bailey.

In response, Monitronics contends that this Request is outside the scope of the court ordered discovery because it does not address Monitronics' views of its obligations. Although Monitronics admits that it has the log that Bailey seeks, Monitronics says that the log contains 180,680 lines of data, all of which must be redacted to protect its other clients' personal information. Monitronics states that there is no need to compel this log. Both parties have already agreed that Monitronics received no signal from Marie Bailey's alarm system on February 12, 2008. Compelling this log would provide no additional information beyond confirming a fact that both parties have already agreed to.

This court declines to compel this Request. Parties have already agreed that Monitronics did not receive a signal from Marie Bailey's alarm system on the date in question. Furthermore, establishing that Monitronics did not receive a signal from Marie Bailey's alarm does not shed light on Monitronics' views on its obligations under NFPA 72 or the contracts.

E. <u>Request No. 7</u>

Request No. 7 asks:

> For the six months leading up to February 12, 2008, produce all telephone bills/statements associated with the telephone numbers that the digital alarm communicator transmitter (DACT) was programmed to dial from Marie Bailey's alarm system to Monitronics' central station.

Monitronics initially objected to this request on the grounds that it was outside the scope of permissible discovery because it did not pertain to Monitronics' view of its obligations under NFPA 72 or its obligations to Marie Bailey. Further, Monitronics argued that the request was overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence.

As with Request No. 6, Bailey contends that Request No. 7 is calculated to discover admissible evidence on Monitronics' obligation under NFPA 72 to configure the alarm system in such a way as to contact the monitoring company. Bailey also contends that Monitronics' expert relied on this information in forming his opinion.

Monitronics denies that its expert reviewed telephone bills/statements in reaching his opinion. Further, Monitronics argues that the telephone bills/statements do not address Monitronics views of its obligations under NFPA 72 or its obligations to Marie Bailey. As with Request No. 6, Monitronics notes that both sides have already agreed that Monitronics did not receive a signal from Marie Bailey's system on the day of the fire. Telephone bills/statements are not likely to reveal alternative information.

This court agrees with Monitronics. Whether the DACT was sending signals is not pertinent to Monitronic's view of its obligations and duties. Bailey seeks information on whether Monitronics did or did not do a particular act, not whether Monitronics had an obligation or duty to do that act. Therefore, this court declines to compel an answer.

## IV. Conclusion

For the foregoing reasons, this court compels Monitronics to respond to Interrogatory Nos. 5 and 16 and Request No. 2. The remaining Interrogatories and Requests either fall outside the scope of the court's ordered discovery, or it presents too costly a burden upon Monitronics.

**SO ORDERED** this 6th day of August, 2014.

                                           **s/ HENRY T. WINGATE**
                                           **UNITED STATES DISTRICT COURT JUDGE**

**Civil Action No. 3:09-cv-158-HTW-LRA**
**Order**